*275 ORDER (Election Challenge)
AMANDA L. ROCKMAN, Associate Judge.
INTRODUCTION
The Court must address an election challenge to the June 22, 2008 Special Election for District V Legislator Seat # 1. The Court convened Trial to determine whether the plaintiff has satisfied the prevailing statutory burden of proof in this election challenge case. The plaintiff did not meet his burden, causing the Court to enter a judgment in favor of the defendants. Further analysis of the Court follows below.
PROCEDURAL HISTORY
The Court recounts the procedural history in significant detail in a previous judgment. Order (Prelim. Determinations), CV 08-33 (HCN Tr. Ct., July 9, 2008) at 1. For purposes of this decision, the Court notes that the plaintiff filed two (2) motions in the interim period between the Pre-Trial Hearing and the Trial On July 14, 2008, the plaintiff submitted the following mo *276 tions: Plaintiffs Motion for Recusal of Michael P. Mu,rphy Attorney for Defense and Plaintiffs Motion for Stay of Special Run-Off Election. The defendants, Election Board members, by and through counsel Miehael P. Muiphy, responded on July 17, 2008, with the Defendants’ Response in Opposition to Plaintiffs Motion to Recuse Defense Counsel, Affidavit of Michael Murphy in Support of Defendants’ Response to Recusal Motion, and Defendants’ Response in Opposition to Plaintiffs Motion to Stay Election, The plaintiff did not request expedited consideration or a motion hearing, and failed to include a legal memorandum; however, the Court heard and denied both motions at Trial.[1] The Court convened the Trial on July 18, 2008 at 9:00 a.m. CDT, The following parties appeared at the Hearing: Stewart J. Miller, plaintiff; Judith A. Whitehorse, defendant; and Attorney Michael P. Mux*phy, defendants’ counsel.
APPLICABLE LAW
CONSTITUTION OF THE HO-CHUNK NATION
Art. VIII Elections
Sec, 2. Special Elections. Special Elections shall be held when called for by the General Council, the Legislature, or by this Constitution or appropriate ordinances. In all Special Elections, notice shall be provided to the voters.
Sec. 4. Election Board. The Legislature shall enact a law creating an Election Board. The Election Board shall conduct all General and Special Elections. At least sixty (60) days before the election, the Election Board may adopt rules and. regulations governing elections. Election Board members shall serve for two (2) years. Election Board members may serve more than one term. The Legislature may remove Election Board members for good cause.
Sec. 7. Challenges of Election Results. Any member of the Ho-Chunk Nation may challenge the results of any election by filing suit in Tribal Court within ten (10) days after the Election Board certifies the election results. The Tribal Court shall hear and decide a challenge to any election within twenty (20) days after the challenge is filed in Tribal Court.
ELECTION ORDINANCE, 2 HCC § 6
Subsec. 4. Election Board.
a. Appointment of Election Board. As required by Article VIII, Section 4 of *277 the Constitution, there is hereby created an Election Board....
Subsec. 15. Challenges to the Election Results.
b. The person challenging the election results shall prove by clear and convincing evidence that the Election Board violated this Election Ordinance or otherwise conducted an unfair election, and that the outcome of the election would have been different but for the violation. If the Court finds the challenge is frivolous and/or wholly without merit, the party challenging shall be assessed costs of the action in an amount to equal five hundred dollars ($500.00).
HO-CHUNK NATION RULES OF CIVIL PROCEDURE
Rule 18. Types of Motions.
Motions are requests directed to the Court and must be in writing except for those made in Court. Motions based on factual matters shall be supported by affidavits, references to other documents, testimony, exhibits or other material already in the Court record. Motions based on legal matters shall contain or be supported by a legal memorandum, which states the issues and legal basis relied on by the moving party. The Motions referenced within these Rules shall not be considered exhaustive of the Motions available to litigants.
Rule 44. Presence of Parties and Witnesses.
(A) Subpoenas. Subpoenas may be used to cause a witness to appeal- and give testimony. If a party wishes to have a subpoena issued by the Court, he/she shall furnish a properly prepared subpoena, including information necessary for service of process, at least ten (10) calendar days before trial. Service will be completed at least three (3) calendar days prior to hearing or trial. When service has been completed, the Court shall mail proof of service to all parties. When service of the subpoena will not be through the Court, the requesting party shall present the properly prepared subpoena to the Court for signature in time to ensure proper service before the hearing or trial and shall return proof of service to the Court prior to the trial. If a party does not timely request a subpoena, he/she shall not be entitled to a postponement because of the absence of the witness. If the subpoena has been timely issued, the Court may, in its discretion, postpone the hearing or trial. A person who fails to appear after being subpoenaed may be held in contempt of Court.
Rule 74. Application and Purpose; Sanctions; Definitions.
(A) Application. These Special Rules for Election Challenges shall apply to a proceeding where a party (or parties) seek(s) to challenge an election. Unless otherwise provided for in the Special Rules for Election Challenges, the Rules of Civil Procedure and the Rules of Appellate Procedure shall apply.
FINDINGS OF FACT
1. The parties received proper notice of the July 18, 2008 Trial
2. The plaintiff, Stewart J. Miller, is an enrolled member of the Ho-Chunk Nation, Tribal ID# 439A002566, and maintains an address of 11332 Valerian Way, Roscoe, IL 61078.
3. The defendants, Ho-Chunk Nation Election Board members (hereinafter Election Board members) are duly appointed representatives of the Election *278 Board, a constitutionally established entity, maintaining an address of 206 Roosevelt Road, Black River Falls, WI 54615. Constitution of the Ho-Chunk Nation (Hereinafter Constitution), Art. VIII, § 4.
4. On Wednesday, May 21, 2008, Ho-Chunk Nation Legislator Michael Goze resigned as Distinct V Legislator. Compl., Ex. B.
5. On May 28, 2008, the Election Board posted Notice and Rules of Special Election June 22, 2008. Id., Ex. A.
6. On or prior to May 31, 2008, Ms. Mary Mullen resigned from the Election Board. Defs. ’ Ansiver, Ex. 6.
7. On or around June 11, 2008, Mr. Patrick RedEagle resigned from the Election Board. Id., Ex, 7.
8. On June 22, 2008, the Election Board conducted a Special Election, which included an open seat for District V Legislator Seat # 1 of the Ho-Chunk Nation. Candidate Patrick Red Eagle received 16 votes out of a total of 51 votes cast, amounting to 31.37% of the tabulated votes. Candidate Libby Fairchild received 15 votes, amounting to 29.41% of the tabulated votes. Candidate Alicia Miner received 11 votes, amounting to 21.57% of the tabulated vote. The plaintiff received 3 votes, amounting to 5.88% of the tabulated votes. HCN Election Results (June 23, 2008).
9. On June 23, 2008, the Election Board certified the Special Election results, thereby placing Mr. Red Eagle and Ms. Fairchild in the Run-off Election.[2]
10. On July 2, 2008, the plaintiff filed a timely election challenge. Const., Aht. VIII, § 7. Within the Complaint, the plaintiff alleges that the Election Board conducted an unfair election, and requests another Special Election. Compl. at 17-18.
11. The Ho-Chunk Sports & Expo Center Pow-wow was held June 20-22, 2008, in Lynwood, IL. Pl.’s Ex. H. The plaintiff contends that Ho-Chunk tribal members were denied the right to vote due to powwow attendance. LPER, 09:24:19 CDT.
12. On June 22, 2008, the Chicago Cubs and Chicago White Sox had a baseball game. The plaintiff contends that traffic problems may have contributed to the lack of voters for the Chicago area. Compl. at 16; LPER, 09:24:40 CDT.
13. At Trial, the plaintiff presented the testimony of one (1) eligible voter, which did not satisfy his burden of production.[3] LPER, 11:28:54 CDT (citing Election Ordinance, § 6.15b).
14. Ms. Mullen stated that she resigned from the Election Board, because she was neither consulted, nor allowed to vote regarding the scheduling of the June 22, 2008 Special Election. Id., 09:51:51 CDT.
15. Election Board Chairperson, Judith Ann Whitehorse, phoned a Department of Justice Attorney, who indicated that Special Elections can be held at inconvenient times, however, it would be best to hold the Election on June 22, 2008. Id., 10:41:45. Ms. Whitehorse stated that she returned a phone call to Ms. Mullen indicating as such. Id., 11:14:14.
16. Ms. Mullen had voted with an absentee ballot in prior elections. Id., 10:02:14 CDT. Though she was familiar with how to obtain an absentee ballot, she did not re *279 quest an absentee ballot for the June 22, 2008 Special Election. Id., 10:01:22 CDT.
17. The plaintiff voted with an absentee ballot at the June 22, 2008 Special Election. LPER, 11:31:48 CDT.
18. The plaintiff chose a variety of elections, and compared such elections, and noted that the average number of Chicago voters is well-above five (5) voters in past elections. Id., 09:45:44 CDT.
19. The plaintiff indicated through such average statistical analysis, as few as sixteen (16) additional voters would have likely been expected to vote from the Chicago area. The plaintiff does not know who would have voted for which candidate. The plaintiff acknowledges that he does not know sixteen (16) individuals fitting within this hypothetical category; however he does know four (4) individuals. Id., 10:05:46 CDT.
20. Neither the plaintiff nor the witness offered testimony as to which candidate the four (4) individuals would support with his or her votes.
21. At Trial, the plaintiff alleged that Mr. RedEagle acted in an official capacity as an Election Board member on or around June 13, 2008, and wished to invalidate Mr. Red Eagle and Ms. Miner’s Official Nomination Petitions. Id., 10:11:08; 11:26:16 CDT. The original Complaint did not allege any such violation of the Election Code.
22. The Election Board Office Manager, Ms. Olvera-Marquez, indicated that the candidate signs the Official Nomination Petition when it is issued. Id., 11:03:49 CDT.
23. The Court reviewed five (5) nomination petitions, and each petition had between four (4) and six (6) signatures. In some petitions, the candidates signed, in other petitions, the Election Board members signed. Trial, Ex. A.
DECISION
Pursuant to the Election Ordinance, a challenger must prove by clear and convincing evidence that the Election Board violated the Ordinance or conducted an unfair election. Election Ordinance, § 6.15b. In addition, it must be proven that the election would have been different, but for the violation. Id.; see also Demetrio D. Abangan et al. v. HCN Election Bd., SU 02-02 (HCN S.Ct., Mar. 25, 2002) at 3 n. 1 (acknowledging the statutory modification from “could” have been different to “would” be different). The Supreme Court has previously stated that “[sjubstantial compliance shall satisfy this Ordinance [sic].” Christine Funmaker-Romano et al., SU 05-08 (HCN S.Ct., Aug. 3, 2005) at 7. Under this two-part test, minor infractions can be dismissed if the election results would remain unchanged, however with major violations there is a greater chance of variance in the results. See generally id. at 6. The Supreme Court previously determined that the legislative intent for creating the second prong of this test was to ensure that the wishes of the voting populace are upheld to the extent that the Ordinance allows. Id. at 8. In close races where it cannot be proven that the outcome would change, it would undermine “the credibility of the Judiciary to have it decide who won an election and makes it seem merely an arm of the political branches by deciding close elections.” Id. Therefore, both prongs must be proven by clear and convincing evidence in order to successfully challenge an election.
With regard to whether the June 22, 2008 Special Election was fail*, it is the obligation of the plaintiff to prove by clear and convincing evidence such election was unfair. The clear and convincing standard of proof requires that the result shall not *280 be reached by a mere balancing of probabilities, but rather by clear evidence that causes the Court to be unequivocally convinced that the allegations sought to be proved are true. In order to prove something by “clear and convincing evidence,” the party with the burden o f proof must convince the Court that it is substantially more likely than not that the allegation is in fact true.
The plaintiff argued that because the June 22, 2008 Special Election and the last day of the Ho-Chunk Sports & Expo Center Pow-wow coincided, it was unfair to the Chicago area voters. LPER, 09:24:19 CDT. Further, those potential voters that may have attempted to vote on June 22, 2008, would have been in traffic due to the Chicago Cubs and Chicago White Sox baseball game. Com pi. at 16; LPER, 09:24:40 CDT. If the Election Ordinance did not provide recourse for potential voters that could make it to the designated Polling Places, then this could seem unfair; however, the Election Ordinance allows for absentee voting. Election Ordinance, § 6.11. Further, the plaintiff did not argue that the absentee voting system was flawed, and acknowledged that he was the sole absentee voter. Id., 11:31:48 CDT. The plaintiff, therefore, did not prove that the Election Board conducted an unfair election.
Regarding the second prong, the plaintiff stated that on average approximately twenty-one (21) Ho-Chunk voters vote from the Chicago area in each election, and therefore approximately sixteen (16) voters were denied the right to vote. LPER, 09:45:44 CDT. The plaintiff acknowledged that he only knew four (4) of those voters, and no testimony was offered as to which candidate those four (4) voters would have voted. Id., 10:05:46. Further, the plaintiff s witness was aware of the proxy voting procedures, but chose not utilize those procedures. Id., 10:01:22. The Court cannot make any inference as to how many voters would have voted, and to do so would cause the Court to enter into speculation. Moreover, to the extent that a violation would or could have been shown, the plaintiff did not show that the outcome wrould have been different.
BASED UPON THE FOREGOING, the Court finds that the plaintiff has failed to prove the two-part test established for deciding election challenges. Election Ordinance, 2 HCC § 6.15b. Namely, the plaintiff did not unequivocally convince the Court that the defendants conducted an unfair election or violated a section of the Election Ordinance, under the clear and convincing standard. The parties retain the right to appeal this final judgment pursuant to the Special, Rules for Election Challenges. HCN R. Civ. P. 80.
IT IS SO ORDERED this 21st day of July 2008, by the Ho-Chunk Nation Trial Court located in Black River Falls, W1 within the sovereign lands of the Ho-Chunk Nation.

. The Court denied the request for a stay [sic ] or preliminary injunction because the Court would otherwise deal with the issues at Trial, thereby rendering the four prong test moot. Coalition for Fair Gov't v. Chloris A Lowe, Jr. et al., SU 96-02 (HCN S.Ct., July 1, 1996) at 7. Further, the Court denied the plaintiffs motion to remove Attorney Murphy from the case. The plaintiff did not cite any law or professional rule of conduct, which Attorney Murphy violated. See Ho-Chunk Nation Rules of Civil Procedure (hereinafter HCN R. Civ. P., Rule 18) (requiring that a legal memorandum accompany a motion addressing a legal matter). The plaintiff indicated that a conflict of interest or an appearance of impropriety existed, primarily because the Ho-Chunk Nation Legislature contracts work from Attorney Murphy’s firm, Whyte Hirschboeck & Dudek, S.C. (hereinafter WHD). Pl’s Mot. for Recusal of Michael P. Murphy Att'y for Def. at 2. The defendants' argued that the motion was untimely, and if granted it would prejudice the Election Board members, in addition, the defendants argued that Attorney Murphy and WHD performed a "conflicts check,” and such check did not violate the Wisconsin Rules of Professional Conduct for Attorneys, including the rule entitled Conflicts of Interest Current Clients. Defs.' Resp. in Opp. to Pl.'s Mot. to Recuse Def. Counsel at 2; Trial (LPER, July 18, 2008, 09:10:55 CDT). The Court did not remove Attorney Murphy from the proceedings.

. The official certification of election results does not reflect the date of certification as required by prior decision of the Court. Stewart J. Miller v. HCN Election Bd„ CV 01-57 (HCN Tr. Ct„ May 24, 2001).

. The Court informed the plaintiff of the Election Challenge standard. Pre-Trial Hearing (LPER, July 9, 2008, 02:35:28 C0T); Order (Preliminary Determinations), CV 08-33 (HCN Tr. Ct, July 9, 2008) at 5.